IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3274-FL

| | | |
|---|---|---|
| FERRIS R. LANGLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PAUL G. BULTER, JR., DANNY G. MOODY, and PATRICK McCRORY,[1] | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 25). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On October 22, 2015, plaintiff, a state inmate, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983. (DE 1). On April 20, 2016, the court directed plaintiff to particularize his complaint and, specifically, to "name the party responsible for his alleged deprivation, the injury stemming from the party's actions or inactions, and the alleged facts to support his claim." (DE 9 at 2). On May 16, 2016, plaintiff filed his particularized complaint ("complaint") against defendants former Governor Pat McCrory ("McCrory"), former Chairman of the North Carolina Post-Release Supervision and Parole Commission ("commission") Paul G. Bulter, Jr. ("Butler"), and

---

[1] The court has constructively amended the caption of this order to reflect the dismissal of the following previously-named defendants: Willis J. Fowler, Anthony E. Rand, Derrick E. Wadsworth, James Forte, and Beverly Purdue.

commissioner of the commission Danny G. Moody ("Moody"). (Complaint (DE 12)). The court construes plaintiff's complaint to allege the following claims: wrongful denial of parole eligibility, due process violation, and false imprisonment. With his complaint, plaintiff submitted the following attachments: North Carolina General Statutes concerning parole protocol, two pages from what plaintiff asserts are summaries of notes regarding parole eligibility of certain inmates, and plaintiff's grievance filed with the North Carolina Department of Public Safety Prisons. The court completed its frivolity review on May 27, 2016, and ordered that the case proceed against the defendants named in the complaint.

On April 3, 2017, defendants filed the instant motion for summary judgment, including a memorandum in support of their motion, statement of material facts, and affidavit of Mary Stevens. Plaintiff filed a response in opposition including a statement of material facts and appendix containing 1) procedures for the mutual agreement parole program ("MAPP") under the North Carolina Department of Correction Division of Prisons, 2) procedures relating to the responsibilities of the commission, 3) information concerning structured sentencing, and 4) definitions of certain crimes.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Plaintiff received suspended sentences and probation in Pitt County Superior Court for the following convictions on the following dates: assault inflicting serious injury on February 20, 1990, two counts of assault on a law enforcement officer and one count of damage to personal property on October 22, 1990, and misdemeanor breaking and entering on July 30, 1991. A subsequent Pitt County conviction on August 1, 1991, for three counts of felony

breaking or entering, resulted in a three-year sentence as a committed youthful offender and revocation of plaintiff's probation on the prior convictions.

On June 29, 1993, plaintiff was convicted in Pitt County of larceny from the person, a Class H felony, for which he received an active term of imprisonment of seven years with a recommendation for work release. On June 7, 1994, plaintiff was granted community service parole by the commission under which he agreed, in part, to obey all state laws.

Beginning on June 28, 1994, three weeks after being released on community service parole, plaintiff engaged in a series of offenses: 1) two robberies with a firearm on June 28, 1994; 2) second-degree murder on August 3, 1994; and 3) second-degree murder on August 4, 1994.

On November 10, 1994, the commission revoked plaintiff's community service parole. On December 15, 1994, the commission considered plaintiff for parole on the 1993 larceny conviction but denied parole release at that time.

Following a trial by jury on the robbery charges, plaintiff was found guilty and, on June 21, 1995, was sentenced to a term of 40 years on the first robbery charge and a term of 25 years on the second robbery charge, to be served consecutively. On April 30, 1997, plaintiff pleaded guilty to the two counts of second-degree murder.[2] On the first murder conviction, plaintiff received a life sentence to run consecutively to his earlier convictions. For the second murder conviction, plaintiff received a life sentence to run consecutively to the life sentence on the first murder conviction.

Since June 21, 1995, plaintiff has been serving his sentence and is currently incarcerated at Pamlico Correctional Institution. On February 16, 2015, plaintiff requested information regarding his parole eligibility thorough the North Carolina Department of Public Safety Prisons

---

[2] Date of sentencing is not contained in the record.

Administrative Remedy Procedures but alleges that he received no response. Defendants assert plaintiff has not been reviewed for parole in over twenty years.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to

4

be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.   Analysis

A challenge to the procedures used to determine an inmate's eligibility for parole is correctly brought pursuant to § 1983. See Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (ruling a challenge to state procedures denying parole could be brought under § 1983 because plaintiff would be entitled, at most, to a new parole hearing and not a reduced sentence); see also Brown v. Johnson, 169 F. App'x 155, 157 (4th Cir. 2006) (holding that prisoner challenges to parole guidelines should proceed under § 1983); Overman v. Beck, 186 F. App'x 337, 338 (4th Cir. 2006) (holding that § 1983 is the appropriate cause of action for inmate challenges to "policies and procedures applicable to their parole reviews, [but] not the denial of parole itself").

Defendants move for summary judgment on the basis that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. In particular, defendants

5

argue that 1) plaintiff's challenge that he is eligible for parole or review for parole is incorrect in that plaintiff is not eligible for parole until July 30, 2028; 2) plaintiff has received all due process to which he was entitled in the parole review process; and 3) defendants have not falsely imprisoned plaintiff under North Carolina law. The court will address each argument in turn below.

1. Parole Eligibility

Plaintiff's primary argument is that he has not been afforded the right to become eligible for parole nor has his case been reviewed for parole since his sentence started on June 21, 1995. However, because plaintiff does not become parole eligible until July 30, 2028, plaintiff's argument must fail.

Because plaintiff's crimes were committed prior to October 1, 1994, plaintiff was sentenced under the Fair Sentencing Act ("FSA") and not the later enacted Structured Sentencing Act ("SSA"). See State v. Whitehead, 365 N.C. 444 (2012) ("The General Assembly enacted the [SSA] to supersede the FSA for offenses committed on or after the SSA's effective date, 1 October 1994." (emphasis omitted)). Therefore, the court must apply the FSA rather than the provisions of the SSA to issues of plaintiff's parole eligibility.

The FSA provides for parole of persons serving a life sentence. "A prisoner serving a term of life imprisonment with no minimum term is eligible for parole after serving 20 years." N.C. Gen. Stat. § 15A–1371(a1) (1993). Pursuant to N.C. Gen. Stat. § 15A–1355(c) (1993), the commission may give credit for "good time" to be applied toward eligibility for parole. In plaintiff's case the commission may apply good time pursuant to N.C. Gen. Stat. § 15A–1340.7(b) (1993), which states in part that a person serving a sentence for "a felony shall receive credit for good behavior at the rate of one day deducted from his prison or jail term for each day he spends in custody without a major

infraction of prison conduct rules." In addition, "a person convicted of robbery with firearms or other dangerous weapons shall serve a term of not less than seven years in prison, excluding gain time granted under G.S. 148–13." N.C. Gen. Stat. § 14–87(d) (1993).

In order to calculate the parole eligibility term for a person serving multiple consecutive sentences as in this context, the minimum term to be served before parole eligibility occurs consists of the total of the minimum terms for each of the consecutive sentences.[3] Under the above provisions, the most that plaintiff's parole eligibility term could be reduced for a life sentence is to a term of ten years for one life sentence and to a term of 20 years for both life sentences. Additionally, the most that plaintiff's parole eligibility term could be reduced for armed robbery is to a term of seven years for one of the armed robbery sentences and to a term of 14 years for both armed robbery sentence, creating a total of 34 years to be served before parole eligibility occurs.[4]

Plaintiff argues he qualifies for mandatory parole pursuant to N.C. Gen. Stat. § 15A-1371(f) (1993). That statue previously provided for mandatory parole "no later than six months prior to [an offender's] completion of his maximum term," but limitations applied, including exclusion from this provision if the offender "had been reimprisoned following parole as provided in G.S. 15A-1373(e)." 1993 N.C. Sess. Laws 538, § 22. Because plaintiff received parole on June 7, 1994 and was thereafter reimprisoned, (see DE 28-1 at 2), the provisions of N.C. Gen. Stat. § 15A-1371(f) (1993) never applied.

---

[3] In determining the effect of consecutive sentences, the department of correction must treat a defendant as if he had been committed for a single term. See N.C. Gen. Stat. § 15A-1354(b)(1993). In such a case, the minimum term of imprisonment consists of the total of the minimum terms of the consecutive sentences. See N.C. Gen. Stat. 15A-1354(b)(2)(1993).

[4] Defendants calculate plaintiff will be eligible for parole on July 30, 2028, which is roughly one year less than that which the court calculates. Because defendants' calculation provides for an earlier time for parole eligibility, the court does not find this inconsistency to raise a genuine issue of material fact as to plaintiff's claims.

Plaintiff argues that the "defendants are guilty of actual vindictiveness in not reviewing him for parole due to not having family or friends working in the state government office as it did for other inmates. See attached exhibits." (Complaint (DE 12) at 7). The attached exhibit referenced appears to be a two-page list of 38 names that includes each person's release date, years served, sentence, and crime as well as a comment section. Neither the exhibit nor plaintiff indicates who created this document, what if any institution this document is associated with, or when this document was made. Plaintiff points the court to one comment which states "Sister knows Rep. Ronnie Sutton of the State House Judiciary Committee." No other information is offered. Because plaintiff is not eligible for parole, which is the reason why plaintiff has not been reviewed for parole, this attached exhibit does not create a genuine issue of material fact as to any potential claims plaintiff may have against defendants.

Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.[5]

2.     Due Process

Under North Carolina law, the commission possesses the exclusive authority to grant parole. N.C. Gen. Stat. § 143B-720(a), (b) (2015). Within that authority, the commission is "empowered to adopt such rules and regulations, not inconsistent with the laws of this State, in accordance with which prisoners eligible for parole consideration may have their cases reviewed and investigated and by which such proceedings may be initiated and considered." N.C. Gen. Stat. § 143B-720(c) (2015).

---

[5] Similarly, no genuine issue of material facts exists regarding any claims plaintiff may have based on the Eighth Amendment to the United States Constitution. First, defendant McCrory had no legal authority to release offenders on parole despite assuming office in January 2013 as governor of North Carolina. Such authority rests solely with the commission. See N.C. Gen. Stat. §§ 143B-720(a),(b) (2015). Second, neither defendant Butler or defendant Moody considered plaintiff for parole release due to plaintiff's ineligibility. Since plaintiff has never been improperly denied parole release by defendants, plaintiff cannot sustain a claim against defendants in their individual or official capacities for violation of the Eighth Amendment. To the extent plaintiff is challenging his sentence as disproportionate to the crimes committed under the Eighth Amendment, plaintiff has failed to raise a genuine issue of material facts as to this claim.

Whenever the commission considers for parole an offender who, like plaintiff, is serving a life sentence, it must notify the offender, the district attorney of the district where the offender was prosecuted, the head of the law enforcement agency that arrested the prisoner and the sheriff of the county where the crime occurred, any of the victim's immediate family members who have requested notification, and the media. N.C. Gen. Stat. § 15A-1371(b)(3) (2015). The commission "must consider <u>any information</u> provided by such parties before consideration of parole." <u>Id.</u> (emphasis added).[6]

Plaintiff specifically objects to the process afforded by North Carolina regarding parole, arguing that his due process rights have been violated in that he is not allowed to have a hearing before the commission and because the documents the commission consults are privileged.[7]

While the Fourth Circuit Court of Appeals in <u>Bradford</u> found that due process principles apply in the parole review context, it specifically expressed no view on what process is due. <u>Bradford v. Weinstein</u>, 519 F.2d 728, 733 (4th Cir. 1974) (noting that "to conclude that the due process clause has application to parole eligibility proceedings is only the beginning of the inquiry, because immediately and inevitably the next question is how much process is 'due.' On this, we express no view."). Following <u>Bradford</u>, the Fourth Circuit held in <u>Vann</u> that "[e]ven where this court has found that a parole statute establishes a liberty interest, we have held that inmates are entitled to no more than minimal procedure" and that "[a]t most, we have held that parole authorities

---

[6] Defendants additionally describe the commission's practices and procedures provided for in a review process in addition to the statutorily required information it must consider. (DE 26 at 13-14).

[7] Plaintiff in his original complaint stated that "the fact of, nor the duration of any sentence is at issue here, only the standards that are to apply to any (future Parole consideration or even coming up for review period is at issue) here." (DE 1 at 1). However, in plaintiff's particularized complaint plaintiff's requested relief is immediate release. (Complaint (DE 12) at 8). To the extent that plaintiff is challenging the fact or duration of his confinement, he must seek federal habeas corpus relief or the appropriate state relief. <u>See</u> <u>Wilkinson</u>, 544 U.S. 74. However, as stated above, a challenge to the procedures used to determine an inmate's eligibility for parole is correctly brought pursuant to § 1983. <u>See id.</u>

9

must furnish the prisoner a statement of its reasons for denial of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996) (interior citations omitted); see id. at 521 ("[i]t is difficult to imagine a context more deserving of federal deference than state parole decisions"). Beyond furnishing a statement of reasons for denial, the Fourth Circuit has "declined to hold that, as a constitutional matter, each prisoner must receive a personal hearing, have access to his files, or be entitled to call witnesses in his behalf to appear before the Board." Burnette v. Fahey, 687 F.3d 171, 182 (4th Cir. 2012) (interior citation omitted).

Plaintiff points to N.C. Gen. Stat. § 143B-721.1, which provides that every fiscal year, the commission is required to "analyze the amount of time each inmate who is eligible for parole on or before July 1 of the previous fiscal year has served compared to the time served by offenders under Structured Sentencing for comparable crimes." N.C. Gen. Stat. § 143B-721.1(a) (2015) (emphasis added). Specifically, "the Commission shall determine if the person has served more time in custody than the person would have if sentenced to the maximum sentence under" the comparable structured sentencing provisions. Id. If the commission identifies such an offender, "the Commission shall reinitiate the parole review process" for each such offender. N.C. Gen. Stat. § 143B-721.1(c) (2015).

As emphasized above, N.C. Gen. Stat. § 143B-721.1 applies to inmates who are eligible for parole on or before July 1 of the previous fiscal year, and, as such, does not apply in this instance. In sum, plaintiff has not raised a genuine issue of material fact, and therefore defendants' motion for summary judgment is GRANTED as to this claim.

3. North Carolina False Imprisonment

In North Carolina, false imprisonment is the illegal restraint of a person against his will. Fowler v. Valencourt, 334 N.C. 345, 348 (1993). A restraint is illegal if not lawful or not consented to. Id. Here, plaintiff was arrested and, ultimately, was either found guilty by a jury (with respect to his armed robbery convictions) or pled guilty (with respect to his murder convictions), and the sentences imposed by the trial courts have not been overturned. Accordingly, plaintiff's continued incarceration for those crimes was never and is not now illegal. Additionally, defendants had no responsibility in the mid-1990s for plaintiff's arrests or the imposition of his sentences; therefore, defendants have not falsely imprisoned plaintiff.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 25) is GRANTED. The clerk is DIRECTED to close the case.

SO ORDERED, this the 5th day of December, 2017.

LOUISE W. FLANAGAN
United States District Judge